UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE MEDRANO, <br><br> Plaintiff, <br><br> v. <br><br> PARTHASARATHI GHOSH; CHARLES FASANO; LOUIS SHICKER; ARTHUR FUNK; ANDREW TILDEN; RANDY PFISTER; MICHAEL MELVIN; and WEXFORD HEALTH SOURCES, INC., <br><br> Defendants. | No. 13 C 84 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Jose Medrano is an inmate in the custody of the Illinois Department of Corrections ("IDOC") at Pontiac Correctional Center, and previously at Stateville Correctional Center. He alleges that IDOC staff and medical service providers were deliberately indifferent to pain in his back, shoulder, and wrist in violation of the Eighth Amendment. R. 129. Specifically, McDowell has sued the IDOC's former Medical Director, Louis Shicker; the IDOC's former Medical Coordinator, Charles Fasano; Stateville's Warden, Randy Pfister; Pontiac's Warden, Michael Melvin; the IDOC's medical services provider, Wexford Health Sources, Inc.; and doctors employed by Wexford, namely Parthasarathi Ghosh, Arthur Funk, and Andrew Tilden. Defendants have moved for summary judgment. R. 268; R. 272. For the following reasons, Defendants' motions are granted.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

### I. Back Pain

In 1988 or 1989, Medrano underwent back surgery to remove vertebrae. R. 290 ¶ 8. He received steroid injections to address pain from time to time. *See id.* ¶ 9. On September 28, 2009, Medrano saw Dr. Konstantin Slavin at UIC Hospital about his back pain. *Id.* ¶ 10. Dr. Slavin advised that surgery could relieve the pain or make it worse, and Medrano elected to continue to receive epidural injections instead. *Id.* ¶¶ 12-14. He received injections in 2010 and 2011. *Id.* ¶ 15. Defendant

Dr. Tilden referred Medrano to UIC again on July 23, 2012, and UIC's report noted that Medrano "will not benefit from further injections." *Id.* ¶ 17.

On November 15, 2015, Medrano fell in the shower, exacerbating his back pain. *Id.* ¶ 20. Dr. Tilden ordered a CT scan, which noted "degenerative changes without significant progression." *Id.* ¶ 21. Dr. Tilden explained that this meant that Medrano's back condition was unchanged. *Id.* ¶ 22. Dr. Tilden has sought to manage Medrano's back pain by prescribing Naproxen, Neurontin, and Tramadol. *Id.* ¶¶ 23-25.

## II. Wrist Pain

On May 12, 2009, Medrano saw occupational therapist Andrew Offerman. *Id.* ¶ 26. Medrano's exam indicated that he might have carpal tunnel syndrome. *Id.* ¶¶ 27-28. Offerman prescribed a wrist brace. *Id.* ¶ 29. Medrano alleges that Offerman specifically prescribed a brace made of Kevlar, but Offerman testified to the contrary and that he is not aware that such braces exist. *Id.* ¶¶ 29. Medrano was given a wrist brace, but he alleges that the brace does not hold his wrist at the angle recommended by Offerman. *Id.* ¶¶ 29-31.

## III. Shoulder Pain

Medrano was transferred from Pontiac to Stateville on December 31, 2009 to receive physical therapy for his shoulder. *Id.* ¶ 32. Medrano's shoulder improved, but by May 18, 2010, the physical therapist reported to Dr. Ghosh that Medrano's improvement had plateaued and no further improvement was expected. *Id.* ¶ 34. Medrano then had surgery on his shoulder, and subsequently received further

3

physical therapy. *Id.* ¶¶ 35-36. The therapy referral was closed when it was determined that no further improvement was expected. *Id.* ¶ 36.

## IV. Expert Reports

Dr. Jeffrey W. Grosskopf has submitted a report addressing Medrano's condition and treatment. R. 291 ¶ 12. With regard to Medrano's back condition, Dr. Grosskopf opined that additional epidural injections are not recommended; surgery is not recommended; Medrano's back condition has been treated appropriately; and there is no cure for Medrano's back condition. *Id.* ¶¶ 35-39. With regard to Medrano's wrist condition, Dr. Grosskopf opined that Medrano does not have carpal tunnel syndrome, and Medrano was provided with a suitable brace. *Id.* ¶¶ 42, 53. With regard to Medrano's shoulder condition, Dr. Grosskopf opined that Medrano received appropriate treatment and no further treatment is medically necessary. *Id.* ¶¶ 70-72. Medrano has not submitted an expert report. *Id.* ¶ 13.

## Analysis

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display deliberate indifference to serious medical needs of prisoners." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). To establish a deliberate indifference claim under this standard, a plaintiff must show (1) that the plaintiff suffered an objectively serious risk of harm, and (2) that the defendant acted with a subjectively culpable state of mind in acting or failing to act in disregard of that risk. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Nevertheless, the "Constitution is not a medical code that mandates specific medical

4

treatment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). And "evidence that another doctor would have followed a different course of treatment is insufficient to sustain a deliberate indifference claim*." Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015). Rather, "medical professionals . . . are entitled to deference in treatment decisions *unless* no minimally competent medical professional would have so responded under the circumstances at issue." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) (emphasis added). In other words, "[w]hen a medical professional acts in his professional capacity, he may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id*.

## I. Back Pain

### A. Dr. Ghosh

Medrano argues that Dr. Ghosh's failure to provide him with more than one epidural injection per year in 2010-11 was contrary to the advice of Dr. Slavin and constitutes deliberate indifference. *See* R. 295 at 4-5. But Medrano admits that Dr. Slavin testified that "it was in the best interests of the patient that he not continue to receive the epidural injections." R. 291 ¶ 29. Further, Defendants' expert, Dr. Grosskopf opined that further injections were not recommended. *Id*. ¶¶ 35-36. Thus, no reasonable jury could find that Dr. Ghosh's care for Medrano's back condition constituted a substantial departure from accepted professional judgment, and summary judgment is granted to Dr. Ghosh on this claim.

5

### B. Dr. Tilden

Medrano argues that Dr. Tilden was deliberately indifferent to his back condition after he fell in the shower because it took Dr. Tilden seven months to order a CT scan, and then another six months for Medrano to see a specialist. The pain Medrano experienced during this delay might support a finding of deliberate indifference if there was any evidence that the pain was caused by the delay. But to the contrary, the only evidence in the record indicates that faster treatment by Dr. Tilden would not have decreased Medrano's back pain. Dr. Tilden has consistently provided Medrano with prescriptions for pain medication. Dr. Grosskopf has opined that this course of treatment is appropriate and that there is no cure for Medrano's chronic condition. "Back problems are notoriously difficult to address," *Dobbey v. Zhang*, 2013 WL 4838916, at *8 (N.D. Ill. Sept. 10, 2013), and the Seventh Circuit has noted that "[w]hether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interferences, except in the most extreme situations. A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. De Tella*, 95 F.3d 586, 592 (7th Cir. 1996). Medrano has identified no evidence that would allow a jury to draw such a conclusion. Thus, summary judgment is granted to Dr. Tilden regarding his treatment of Medrano's back condition.

## II. Wrist Pain

Medrano argues that Offerman, the occupational therapist, prescribed a wrist brace that would "hold his wrist at a 15 to 20 degree extension." R. 295 at 12. But Offerman testified that his prescription meant that 15 to 20 degrees was the maximum extension the brace should permit, and that anything less than 20 degrees was permissible, including the neutral position. *See* R. 270-30 at 9 (34:13–35:8). Medrano received such a brace, and Dr. Grosskopf opined that this was appropriate treatment. There is no evidence in the record that the treatment Medrano received for his wrist from any defendant was deliberately indifferent.

## III. Shoulder Pain

In 2010, Medrano had surgery on his shoulder followed by a course of physical therapy. Medrano admits that this physical therapy was discontinued when it was determined that it would not lead to any further improvement for him.

Medrano claims that his shoulder pain has increased over the years, and that Dr. Tilden has ignored his requests to be referred again to the outside specialist who performed his surgery. But Medrano also admits that Dr. Tilden has continued to treat his pain with medication. Further, Dr. Grosskopf is of the opinion that the treatment provided for Medrano's shoulder has been appropriate. Medrano has not produced any evidence that he should receive a particular treatment he is not receiving, or that any particular treatment would relieve his pain symptoms. Thus, there is insufficient evidence for a reasonable jury to find that any defendant has been deliberately indifferent to Medrano's shoulder condition.

## IV.  Claims against Administrators and Wexford

In addition to arguing that his doctors have been deliberately indifferent to his medical conditions, Medrano argues that certain administrators have failed to respond to his requests for medical treatment. But since the Court has held that there is insufficient evidence for a jury to find that any of Medrano's doctors provided unconstitutional care, the administrators also cannot be found to have been deliberately indifferent.

Medrano's theory of Wexford's liability relies entirely on his allegation that his doctors were deliberately indifferent to his medical conditions "again and again," which should have made Wexford aware that Medrano was being deprived of appropriate care. R. 295 at 16. But since the Court has found that there is no evidence that Medrano was deprived of appropriate care, Wexford cannot be found liable either.

## Conclusion

For the foregoing reasons, Defendants' motions for summary judgment, R. 268; R. 272, are granted.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated:  April 5, 2018